In re SKELTON FARMS, a partnership, Debtor.

SKELTON FARMS, a partnership, Plaintiff,

v.

SALEM NATIONAL BANK and the United States of America, acting Through the Farmers Home Administration, Defendants.

Bankruptcy No. 86–31290.
Adv. No. 87–0002.

United States Bankruptcy Court,
S.D. Illinois.

Aug. 27, 1987.

Terry Sharp, Mt. Vernon, Ill., for plaintiff.

Ronald L. Pallmann, Fairview Hgts., Ill., for Salem Nat. Bank.

Frederick Hess, U.S. Atty., James Porter, Asst. U.S. Atty., E. St. Louis, Ill., for FmHA.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

This matter is before the Court on plaintiff's Complaint to Determine the Nature, Extent and Validity of Liens. Plaintiff has requested that the Court determine the lien priorities of Salem National Bank ("Bank") and the Farmers Home Administration ("FmHA") in certain equipment, livestock and crops of Skelton Farms. The relevant facts are as follows:

Prior to 1980, Fred Skelton owned a farm in Marion County, Illinois on which he maintained grain and hog operations. He periodically borrowed money from FmHA, and to secure payment of those debts, Mr. Skelton granted security interests to FmHA in all of his livestock and equipment. FmHA subsequently filed with the Recorder of Deeds a number of financing statements showing FmHA as the secured party, and identifying all livestock and equipment as collateral. The first such statement was filed on April 12, 1979 and was continued by the filing of a proper continuation statement on April 11, 1984.

In 1980, Fred Skelton and his son, David, formed a general partnership known as Skelton Farms. Since that time, the Skeltons have maintained a hog operation on property owned by Fred Skelton and situated in Marion County, Illinois.

In February 1984, Fred and David Skelton, on behalf of Skelton Farms, executed and delivered to the Bank a promissory note for the sum of $180,000.00. The Skeltons, individually and on behalf of Skelton Farms, also executed and delivered to the Bank a written security agreement, granting to the Bank a security interest in all livestock and equipment of Skelton Farms. The Bank then filed the appropriate financing statements with the Recorder of Deeds. Frank Bredar, the County Supervisor of FmHA in Marion County, also delivered to the Bank, in February 1984, two subordination agreements with respect to certain listed financing statements executed by Fred and David Skelton. Under the terms of the agreements, FmHA agreed to subordinate its lien in 1984 crops and "livestock sales and breeding stock." The subordination was limited to $180,000.00, which was to be repaid by March 1, 1985.

In February 1985, the Bank and FmHA entered into a "Lender's Agreement," pursuant to which the Bank was designated as an "approved lender" for processing and receiving loan note guarantees issued by FmHA. Under this agreement, the Bank was responsible for servicing any loan made by the Bank, and specifically, was obligated to assure that proceeds from the sale or other disposition of collateral "are applied in accordance with the lien priorities on which the guarantee is based, except the proceeds from the disposition of collateral, such as machinery, equipment, furniture or fixtures, may be used to acquire property of [a] similar nature without written concurrence of FmHA." (Lender's Agreement, ¶ VIII(C)(5)(d)).

On April 4, 1985, Glenn DeFur, the Bank's Vice-President, sent two separate letters to Frank Bredar, requesting loan note guarantees for loans that were to be extended to Fred and David Skelton, each for the sum of $90,000.00. (Separate requests for $90,000.00 each, instead of a single application for the guarantee of a loan for $180,000.00, were submitted at the suggestion of Frank Bredar.) An "Application for Guaranteed Loan" that was attached to each letter showed an indebtedness to the Bank in the amount of $180,-000.00 that was due in April 1985. FmHA issued conditional commitments to guarantee the loans on April 5, 1985.

In May 1985, Fred and David Skelton, individually and on behalf of Skelton Farms, executed and delivered to the Bank two promissory notes, each for the sum of $90,000.00. The Bank then issued two $90,000.00 checks to the Skeltons. $172,-169.06 was applied by the Bank to pay in full three notes of Skelton Farms, and $1,638.00 was paid to the Bank in satisfaction of FmHA's guarantee fees. Subsequently, in August 1985, Frank Bredar executed two loan note guarantees in favor of the Bank, each in the sum of $90,000.00, with respect to the loans made to Fred and David Skelton by the Bank.

According to the evidence presented at trial, Skelton Farms' gross receipts totaled $337,148.00 in 1984 and $418,451.81 in 1985. Fred or David Skelton routinely took checks representing sales of their production to the FmHA office in Marion to obtain the endorsement of one of FmHA's officers. The Skeltons would then take the checks to the Bank for endorsement by one of the Bank's officers. The checks were subsequently deposited in Skelton Farms' checking account to pay for operating expenses or were given to the Bank for payment on debts owed by Skelton Farms.

The Bank states that from May 17, 1985 to December 30, 1986, it received and applied $26,442.50 toward interest that accrued under the notes previously signed by Fred and David Skelton. No sums were applied toward principal, and the Bank now contends that it possesses a perfected and paramount security interest in the livestock of Skelton Farms to the extent of $180,000.00. More specifically, the Bank contends that 1) FmHA obtained a perfected security interest in the livestock of Fred Skelton in 1979, but failed to obtain a security interest in the livestock of Skelton Farms after its creation in 1980; 2) in any event, FmHA agreed to subordinate its security interest in livestock to the Bank; 3) the "Lender's Agreement" between the Bank and FmHA authorized the Bank to release the proceeds of livestock sales to the Skeltons if such proceeds were to be used in farming operations; and 4) even if the "Lender's Agreement" prohibited the release of sales proceeds to Skelton Farms, FmHA is estopped from complaining of these matters under the facts of this case.

FmHA contends that its agreement to subordinate its secured position should be deemed satisfied, or no longer applicable. In support of its position, FmHA argues that 1) although more than $180,000.00 was received by the Bank from the proceeds of sale of Skelton Farms' livestock, the Bank failed to apply those proceeds to reduce the 1984 subordination agreement and the 1985 loan note guaranty; 2) the "Lender's Agreement" required the Bank to apply all sales proceeds directly to the guaranteed loans; and 3) instead of making new loans in 1985, totaling $180,000.00 (for which FmHA guarantees were issued), the Bank used the money to renew existing debts of Skelton Farms. FmHA further contends that it had no authority to require the Skeltons to use the sales proceeds in any particular manner, and that the Bank breached its fiduciary duty of care by not fully informing FmHA that it was allowing Skelton Farms to use the sales proceeds for current operating expenses.

The Court notes the Bank's argument that FmHA obtained a perfected security interest in the livestock of Fred Skelton, but failed to obtain a security interest in the livestock of Skelton Farms. However, the Court believes that it is unnecessary to address this argument. Assuming that the perfected security interest of FmHA survived the creation of Skelton Farms, FmHA nonetheless agreed to subordinate its security interest to the Bank. The Bank, therefore, possesses a superior lien to the extent of $180,000.00. FmHA's argument that the subordination agreement should be deemed satisfied is rejected for the following reasons:

First, according to the language in the "Lender's Agreement," the Bank was authorized to release sale proceeds to the Skeltons if such proceeds were to be used in farming operations. The Agreement required the Bank to assure that "proceeds from the sale ... of collateral are applied in accordance with the lien priorities on which the guarantee is based, *except* the proceeds from the disposition of collateral, *such as* machinery ... may be used to acquire property of [a] similar nature without the written concurrence of the FmHA." (Lender's Agreement, ¶ VIII(C)(5)(d)) (emphasis added). The testimony indicated that the funds released by the Bank to the Skeltons were used to pay operating expenses and to maintain the hog herd. While the particular provision quoted above does not refer to proceeds from the sale of livestock, the provision sets forth only examples. The Agreement clearly indicates that the Bank was authorized to release proceeds from the sales of livestock to the

Skeltons for acquisition of "property of a similar nature."

Second, FmHA's contention that the Bank breached its fiduciary duty of care by not fully informing FmHA that it was releasing sales proceeds to Skelton Farms is simply not supported by the facts. The Bank's letters to FmHA on April 4, 1985 requesting loan note guarantees expressly stated that the loans involved would be "perpetual operating" loans. Applications were submitted by the Bank and the Skeltons on FmHA forms. Loan guarantees totaling $180,000.00 were requested by the Bank. The Skeltons' financial statements submitted in support of the applications for guaranteed loans showed an existing indebtedness to the Bank in the sum of $180,-000.00. Despite the fact that the Bank was requesting loan guarantees in an amount that equalled the Skeltons' existing indebtedness, FmHA failed to contact the Bank to determine whether the Bank was making a new loan or refinancing a debt already owed by the Skeltons. In fact, the Bank's letter requesting loan note guarantees is dated April 4, 1985, and conditional commitments to issue those guarantees were made April 5, 1985. Under all of these circumstances, FmHA should have been aware that the Skeltons were not using the proceeds from their farming operations to reduce the debt owed the Bank, and furthermore, should have known that the purpose of the 1985 loan was to refinance the Skeltons' existing debt. As such, FmHA cannot now complain that the Bank breached its fiduciary duty of care.

Finally, the Court notes that while the Code of Federal Regulations, in 1985, did not expressly authorize (or prohibit) an FmHA County Supervisor to approve applications to guarantee "line of credit" lending, the Code did expressly authorize the County Supervisor to issue guarantees for loans that were used to pay annual operating expenses and family living expenses. *See,* 7 C.F.R. § 1980.175(c) (1985). The Code further authorized the County Supervisor to issue guarantees for loans, the proceeds of which were used to refinance debt "incurred for any authorized operat-

ing loan purpose ..." 7 C.F.R. § 1980.-175(c)(iv) (1985).

Accordingly, for the reasons stated above, the Court finds that the Bank possesses a paramount and perfected security interest in the crops and livestock of Skelton Farms to the extent of $180,000.00.